UNITED STATES of America,
Appellee,

v.

Kris SERGENTAKIS, Defendant–
Appellant.

No. 07–0809–cr.

United States Court of Appeals,
Second Circuit.

Jan. 21, 2009.

Thomas G.A. Brown (Peter B. Sobol and Katherine Polk Failla, Assistant United States Attorneys, of counsel), for Michael J. Garcia, United States Attorney for the Southern District of New York, New York, N.Y., for Appellee.

Kris Sergentakis, pro se Appellant.

Present: ROSEMARY S. POOLER, SONIA SOTOMAYOR and ROBERT A. KATZMANN, Circuit Judges.

**SUMMARY ORDER**

Defendant Kris Sergentakis pleaded guilty to conspiracy to commit commercial bribery, mail fraud, and money laundering, in violation of 18 U.S.C. § 371, use of the mails to facilitate commercial bribery, in violation of 18 U.S.C. §§ 1952(a)(3)(A) & 2, and mail fraud and deprivation of honest services, in violation of 18 U.S.C. §§ 1341, 1346 & 2. After a hearing held pursuant to *United States v. Fatico,* 603 F.2d 1053 (2d Cir.1979), the district court sentenced Sergentakis principally to three concurrent terms of 60 months imprisonment. Sergentakis, proceeding pro se, now appeals. He argues, inter alia, that the district court did not adequately explain the reasons for the sentence that it imposed and that the sentence was without sufficient factual basis. We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

We review a sentence under an abuse-of-discretion standard, for both procedural errors and substantive reasonableness. *Gall v. United States,* —— U.S. ——, 128 S.Ct. 586, 597, 169 L.Ed.2d 445 (2007); *United States v. Cutler,* 520 F.3d 136, 156 (2d Cir.2008).

Sergentakis worked as the print purchasing manager in the graphics department for the Leukemia & Lymphoma Society, Inc. ("LLS"), a non-profit charitable organization, from 2001 to 2004. During that time, he was involved in selecting the vendors that LLS engaged to perform printing services. In 2006, Sergentakis pleaded guilty to a commercial bribery conspiracy in which he awarded printing contracts to certain vendors in exchange for kickbacks.

The district court's sentence was based in part on a calculation of Sergentakis' offense level under Section 2B4.1 of the United States Sentencing Guidelines.

That section provides for graduated increases in a defendant's offense level in a commercial bribery case based on "the greater of the value of the bribe or the improper benefit to be conferred." U.S.S.G. § 2B4.1.[1]

■ The government argues that the measure of the "improper benefit to be conferred" is the amount that certain print vendors overcharged LLS during the course of the kickback scheme. The government presented evidence at the *Fatico* hearing from a graphic media consultant, Steven Schnoll, who calculated this amount by comparing bids for various LLS print jobs in 2005 to the prices that LLS paid for those same print jobs when Sergentakis was selecting the vendors in 2003. Schnoll testified that Sergentakis gave LLS' printing business to co-conspirators who were not equipped to finish the jobs in a cost-effective manner. Schnoll described in detail his analysis of several print jobs, presented data, and stated that he had concluded that the effect of Sergentakis's kickback scheme was to inflate the prices paid by LLS by approximately $1 million in each of the three years that Sergentakis worked there.

Sergentakis argues on appeal that the district court erred because it accepted Schnoll's methodology rather than measuring the profits each vendor realized on its transactions with LLS. Sergentakis also argues that there is a difference between "loss" and "improper benefit to be conferred" under U.S.S.G. § 2B4.1. We recognize that there is a distinction between these two concepts, even if, sometimes, the amount of loss is the same as the improper benefit conferred. *See United States v. Fitzhugh,* 78 F.3d 1326, 1331 (8th Cir.1996) ("The victim's loss is the proper focus for fraud offenses.... The severity of a bribery offense, on the other hand, is measured by the amount of the improper benefit conferred in return for the bribe (or by the amount of the bribe, if greater)."); *see also United States v. Montani,* 204 F.3d 761, 770 (7th Cir.2000) (improper benefit conferred upon conspirator equivalent to loss caused to victim). In this case, the district court correctly calculated the improper benefit conferred and its methodology was not an abuse of discretion. *See United States v. Purdy,* 144 F.3d 241, 248 (2d Cir.1998) (holding that the appropriate measure of improper benefit was "the difference between the putative untainted prices," determined, for example, by competitive bidding procedures, "and the actual bribe-obtained prices").[2]

At the *Fatico* hearing, Sergentakis' attorney argued that the $3 million figure was overstated for various factual reasons independent of the bribery conspiracy. The district court stated at the sentencing hearing that it had given Schnoll's analysis "careful consideration" and also examined the exhibits and testimony submitted by Sergentakis. Based on its assessment of the evidence, the district court concluded that it could not adopt the ultimate conclusions of either side as to the correct figure. The district court found that the amount of the improper benefit conferred was $1 to $1.5 million dollars. Based on our review of the entirety of the evidence, we are not

---

1. The government's brief conflates the improper benefit to be conferred under U.S.S.G. § 2B4.1 with the loss to a victim under U.S.S.G. § 2B1.1. Gov't Br. at 26. But for purposes of this analysis, the two inquiries are separate. *See United States v. Fitzhugh,* 78 F.3d 1326, 1331 (8th Cir.1996).

2. We do not exclude the possibility that the improper benefit conferred might also be measured by gross profits. *See* U.S.S.G. § 2C1.1 cmt. n. 3 ("A $150,000 contract on which $20,000 profit was made was awarded in return for a bribe; the value of the benefit received is $20,000.").

"left with the definite and firm conviction that a mistake has been committed," and therefore, do not conclude that the district court's factual finding was clearly erroneous. *United States v. Iodice*, 525 F.3d 179, 185 (2d Cir.2008) (quotation marks omitted).

Sergentakis also argues that the district court erred in not specifying "what theory of loss it adopted, nor what evidence it found credible, nor what, if anything, had been proven by a preponderance of the evidence in connection with determining the 'value of the improper benefit conferred.'" We find it troublesome that the record contains scant explanation for the district court's conclusion. However, because Sergentakis failed to raise this objection below, we review for plain error. *United States v. Espinoza*, 514 F.3d 209, 212 (2d Cir.2008). Thus, the error "must be plain, which at a minimum means clear under current law" and must "affect substantial rights, which normally requires a showing of prejudice." *United States v. Workman*, 80 F.3d 688, 696 (2d Cir.1996) (alteration and internal quotation marks omitted).

Any error by the district court is not plain. The district court was not required to set forth its calculation with mathematical precision or explain the exact extent to which it credited each factor presented by the defense in discounting the government's $3 million number and arriving at $1 to 1.5 million. *See Purdy*, 144 F.3d at 248 ("[U]nder section 2B4.1, the 'improper benefit conferred' need not be determined with perfect accuracy."). Additionally, any error is harmless, because the figure selected by the district court had sufficient support in Schnoll's testimony and took into consideration the methodological deficiencies raised by the defense.

■ Although Section 3553(c) requires that the district court "state in open court the reasons for its imposition of the particular sentence," 18 U.S.C. § 3553, "[t]he appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon circumstances. Sometimes a judicial opinion responds to every argument; sometimes it does not.... The law leaves much, in this respect, to the judge's own professional judgment," *Rita v. United States*, 551 U.S. 338, 127 S.Ct. 2456, 2468, 168 L.Ed.2d 203 (2007). We cannot conclude that the district court failed to "set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision-making authority." *Id.*

We have found no plain error where a district court failed to state reasons in open court, but rather, as here, adopted the factual findings of a Presentence Report by the United States Probation Office in the judgment and conviction order that were themselves adequate to support the sentence. *Espinoza*, 514 F.3d at 212. We conclude that the factual findings in the Presentence Report, although not entirely consistent with the government's arguments at sentencing, provide sufficient description of Schnoll's basic argument to adequately support the sentence imposed.

The district court ultimately concluded that a sentence three months below the applicable Guidelines range was appropriate. Where the sentence is outside of the advisory Guidelines range, the court must also state "with specificity in the written order" "the specific reason" for the sentence imposed. *United States v. Lewis*, 424 F.3d 239, 243–45 (2d Cir.2005) (quotation marks omitted). We conclude that the district court's explanation of the sentencing factors that it considered in the Statement of Reasons attached to the Judgment and Conviction order is sufficient to meet that standard here. *See*

*United States v. Juwa*, 508 F.3d 694, 699 (2d Cir.2007).

We have considered all of the additional arguments raised by Sergentakis on appeal in his pro se submissions and find them to be without merit. Accordingly, the judgment of the district court hereby is AFFIRMED. Sergentakis' pending motions are DENIED as moot.