08-2247-cr
United States v. Kelly

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 3rd day of March, two thousand ten.

PRESENT: GUIDO CALABRESI,
REENA RAGGI,
*Circuit Judges*,
JOHN G. KOELTL,[*]
*District Judge*.

-----------------------------------------------------------------------
UNITED STATES OF AMERICA,

*Appellee*,

v.                                                              No. 08-2247-cr

HOWARD D. KELLY,

*Defendant-Appellant*.
-----------------------------------------------------------------------

APPEARING FOR APPELLANT:     TINA SCHNEIDER (Diana D. Parker, New York, New York, *on the brief*), Portland, Maine.

APPEARING FOR APPELLEE:     MONICA J. RICHARDS, Assistant United States Attorney, *for* Kathleen M. Mehltretter, United States Attorney for the Western District of New York, Buffalo, New York.

---

[*] District Judge John G. Koeltl of the United States District Court for the Southern District of New York, sitting by designation.

Appeal from the United States District Court for the Western District of New York (David G. Larimer, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of conviction entered on May 6, 2008, is AFFIRMED

Defendant Howard Kelly appeals from his conviction after a jury trial on one count of escape from a halfway house in violation of 18 U.S.C. §§ 751(a) and 4082(a) on grounds of (1) constructive amendment of the indictment and (2) a failure properly to instruct the jury on the element of willfulness. Kelly also challenges his 54-month sentence, asserting procedural error in the district court's calculation of his Guidelines range. In reviewing these challenges, we assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

1.      Constructive Amendment

To demonstrate constructive amendment, a defendant must show that the proof at trial "so altered an essential element of the charge that, upon review, it is uncertain whether the defendant was convicted of conduct that was the subject of the grand jury's indictment." United States v. Milstein, 401 F.3d 53, 65 (2d Cir. 2005) (internal quotation marks omitted); United States v. Clemente, 22 F.3d 477, 482 (2d Cir. 1994) (collecting cases). Constructive amendment is a per se violation of the Fifth Amendment requiring reversal regardless of whether the error prejudiced the defendant. See United States v. Ansaldi, 372 F.3d 118,

126-27 (2d Cir. 2004); United States v. Clemente, 22 F.3d at 482. In general, we review a constructive amendment challenge de novo. See United States v. Rigas, 490 F.3d 208, 225 (2d Cir. 2007). The government submits that where, as here, the defendant fails to object below, our review is limited to plain error by Fed. R. Crim. P. 52(b). See United States v. Vebeliunas, 76 F.3d 1283, 1291 (2d Cir. 1996) (applying plain error standard to constructive amendment claim in absence of objection). In fact, Kelly's constructive amendment claim fails under either standard of review.

The indictment charged Kelly with violating 18 U.S.C. §§ 751(a) and 4082(a).[2] It stated that Kelly "did knowingly, willfully and unlawfully fail to remain within the extended limits of his confinement and did escape from the Volunteers of America, Inc. Halfway

---

[2] Section 751(a) provides, in pertinent part:

> Whoever escapes or attempts to escape from the custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by direction of the Attorney General . . . shall, if the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense, be fined under this title or imprisoned not more than five years, or both . . . .

Section 4082(a) provides that

> [t]he willful failure of a prisoner to remain within the extended limits of his confinement, or to return within the time prescribed to an institution or facility designated by the Attorney General, shall be deemed an escape from the custody of the Attorney General punishable as provided in [18 U.S.C. § 751].

3

House, Rochester, New York, an institutional facility in which he was lawfully confined at the direction of the Attorney General . . . ." Indictment at 1. Kelly submits that the district court constructively amended the indictment by allowing conviction on proof that he failed to report to the halfway house rather than requiring proof that he escaped from a halfway house in which he had been confined at the direction of the Attorney General. In short, Kelly argues that because he never surrendered to the halfway house as directed, he was never confined there and did not escape therefrom. We disagree that the proof at trial effected a constructive amendment.

We have "consistently permitted significant flexibility in proof, provided that the defendant was given notice of the core of criminality to be proven at trial." United States v. Rigas, 490 F.3d at 228 (internal quotation marks and footnote omitted) (emphasis in original). Here, the indictment gave Kelly clear notice of the "core of criminality" alleged – specifically, his failure "to remain within the extended limits of his confinement" and his "escape from the Volunteers of America, Inc. Halfway House." Indictment at 1. The trial evidence did not amend this charge. Rather, it showed that the limits of Kelly's confinement had been extended by a brief furlough to include the route from federal prison in Fort Dix, New Jersey, to the halfway house in Rochester. Indeed, Kelly signed the following statement as a condition of the furlough:

> I understand that if approved, I am authorized to be only in the area of the destination shown above and at ordinary stopovers or points on a direct route

4

to or from that destination. I understand that my furlough only extends the limits of my confinement and that I remain in the custody of the Attorney General of the United States. If I fail to remain within the extended limits of this confinement, it shall be deemed as escape from the custody of the Attorney General, punishable as provided in [18 U.S.C. § 751].

J.A. at 378.

The Supreme Court has explained (1) that to escape is simply to "absent[] oneself from custody without permission," United States v. Bailey, 444 U.S. 394, 407 (1980); (2) that custody need not entail physical restraint, see Jones v. Cunningham, 371 U.S. 236, 243 (1963) (holding that prisoner on parole subject to conditions significantly restraining his freedom is in "custody" of parole board for purposes of habeas challenge); see also United States v. Sack, 379 F.3d 1177, 1179 (10th Cir. 2004) (observing that for purposes of escape statute, custody "may be minimal and, indeed, may be constructive" (internal quotation marks omitted)); and (3) that escape is a continuing offense, see United States v. Bailey, 444 U.S. at 413. Moreover, § 4082(a) specifically defines "escape" to include any "willful failure of a prisoner to remain within the extended limits of his confinement, or to return within the time prescribed to an institution or facility designated by the Attorney General." Here, proof of Kelly's failure to remain within the extended confinement of his furlough, which specified his return to institutional custody at the Volunteers of America halfway house, is fairly viewed as proof of "escape" from the custody of the Attorney General generally, and from

5

the halfway house in particular, "substantially correspond[ing]" to the conduct alleged. See United States v. Rivera, 415 F.3d 284, 287 (2d Cir. 2005) (internal quotation marks omitted).

In sum, we reject the argument that only proof of an escape from the halfway house sometime after Kelly's surrender to that institution could satisfy the indictment. Accordingly, we conclude that Kelly's constructive amendment challenge is without merit.

2.      The Challenged Jury Charge

Kelly argues that the district court erred in failing to instruct the jury that the government was required to prove the willfulness required by 18 U.S.C. § 4082(a). Because Kelly did not object to the jury charge below, our review is limited to plain error. See Fed. R. Crim. P. 52(b); United States v. Weintraub, 273 F.3d 139, 145 (2d Cir. 2001) (identifying plain error standard). We detect no such error here.

In general, willfulness is proved by evidence that a defendant acted voluntarily and with knowledge that his conduct was unlawful, even if he did not know the specific statute violated. See, e.g., Bryan v. United States, 524 U.S. 184, 193-96 (1998) (holding in context of firearms statute that knowledge of conduct's general unlawfulness, rather than knowledge of particular statute, satisfied willfulness requirement); United States v. Bursey, 416 F.3d 301, 309 (4th Cir. 2005) (same in context of statute prohibiting willful entry or refusal to leave restricted area during presidential visit); United States v. Whab, 355 F.3d 155, 162 (2d Cir. 2004) (affirming on plain error review jury instruction that awareness of generally

6

unlawful nature of conduct satisfied willfulness requirement in statute barring false statements to government agents).[3] Only in rare cases where the line between innocent and culpable conduct is particularly difficult to ascertain, as in cases involving "highly technical statutes that present[] the danger of ensnaring individuals engaged in apparently innocent conduct," Bryan v. United States, 524 U.S. at 194, does willfulness require a specific intent to violate a particular law. This case does not involve any such statute. The wrongfulness of leaving criminal custody without permission is readily apparent from the act itself. Consequently, the district court's repeated instruction that the jury must find beyond a reasonable doubt that Kelly acted with knowledge that "he did not have permission to leave the federal custody that restrained him," Trial Tr. at 344, was sufficient to ensure the jury's understanding of the willfulness requirement.

To the extent the district court's lone statement that willfulness requires "the specific intent to do something the law forbids" might have prompted jurors to apply a stricter standard than necessary – which we doubt – the mistake was hardly plain error, as it only inured to Kelly's benefit by increasing the government's burden. Id. at 342-43; see United

---

[3] In United States v. George, 386 F.3d 383 (2d Cir. 2004), a case interpreting 18 U.S.C. § 1542's prohibition against "willfully and knowingly" making a false statement in a passport application, we indicated that even knowledge of general unlawfulness is unnecessary under statutes criminalizing conduct whose wrongfulness is obvious from the surrounding context. See id. at 395 (observing that that because "no conceivable meritorious reason exists for knowingly submitting false information on a passport application," conviction did not require defendant's "awareness of the generally unlawful nature of his or her conduct").

7

States v George, 386 F.3d 383, 398 (2d Cir. 2004) (observing that where jury convicts defendant under "more exacting mens rea standard than necessary," it follows that lesser standard was satisfied).

3.    The Sentencing Challenge

U.S.S.G. § 2P1.1(a)(1) provides for a base offense level of 13 for escape, but the Guideline affords a downward adjustment of four levels for escape from a halfway house unless the defendant commits a felony while away from the designated facility. See U.S.S.G. § 2P1.1(b)(3).  Kelly submits that the district court erred in denying him the four-level reduction without making a factual finding that he had committed the requisite felony during his escape.  Where, as here, a defendant does not object to the denial of an offense-level reduction or to the court's failure to make specific factual findings, we review only for plain error.  See United States v. Espinoza, 514 F.3d 209, 211-12 (2d Cir. 2008).

We have held that "a district court satisfies its obligation to make the requisite specific factual findings when it explicitly adopts the factual findings set forth in the presentence report."  United States v. Carter, 489 F.3d 528, 539 (2d Cir. 2007).  Here, the district court openly based its calculation of Kelly's Guidelines range on the PSR, but it failed to specify which facts alleged in the report supported its implicit conclusion that Kelly committed a felony during his escape.  Indeed, while the PSR detailed charges pending in Maine arising from Kelly's use of false identification to commit felony bank fraud in violation of 18 U.S.C.

8

§ 1028(a)(7), the district court expressly declined to find that Kelly had committed the charged crimes, commenting that they were "matters for another day." Sentencing Tr., May 1, 2008, at 9.

In light of the foregoing, we are obliged to conclude that the district court erred in failing to make factual findings necessary to deny Kelly a § 2P1.1(b)(3) offense-level reduction. No remand is required, however, because the required fact is conclusively established by Kelly's subsequent guilty plea in Maine to felony bank and mail fraud crimes committed during his escape. We take judicial notice of Kelly's plea, to which his lawyer stipulated during oral argument, as it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). The plea permits us to conclude that any error with respect to § 2P1.1(b)(3) findings was clearly harmless. See United States v. Jass, 569 F.3d 47, 68 (2d Cir. 2009) (applying harmless error analysis to Guidelines calculation challenge).

4.    Conclusion

We have considered all of Kelly's remaining arguments on appeal and conclude that they are without merit. Accordingly, the judgment of the district court is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court